[No. 3698. Decided April 17, 1901.]

FALL AND SOCKEYE FISH COMPANY, *Respondent*, v. POINT ROBERTS FISHING AND CANNING COMPANY, *Appellant*.

FISH AND FISHERIES — LOCATION OF TRAPS — SALE — CAVEAT EMPTOR — RIGHTS OF PURCHASER.

Where plaintiff purchased at a receiver's sale one of two fish traps owned and operated by defendant, with actual knowledge that the two locations were within the lateral limits allowed by statute, the rule of *caveat emptor* applies, and plaintiff having purchased with knowledge of the defect must be satisfied therewith, and is not entitled to enjoin defendant from operating its remaining trap within the statutory distance of 2,400 feet from the one purchased by plaintiff, but its remedy is restricted to restraining defendant from moving its trap location closer than it was at the time of sale.

Appeal from Superior Court, Whatcom County.—Hon. WILLIAM HICKMAN MOORE, Judge. Reversed.

*Dorr & Hadley,* for appellant.

*Kerr & McCord,* for respondent.

The opinion of the court was delivered by

MOUNT, J.—In the year 1898 appellant was the owner of two pound net fishing locations off Point Roberts, in the Gulf of Georgia, in Whatcom county. These locations were commonly known as "House Trap" location and "Goodfellow Trap No. 12." House trap location was west laterally a distance of 2,535 feet from another location known as the "Milligan Trap," owned by respondent. The Goodfellow Trap No. 12 was west laterally 2,060 feet between the nearest points from House trap location. In the year 1898, the appellant company being insolvent, a receiver of said company was appointed by the superior court of Whatcom county, and said receiver took charge of these two locations, viz., House trap and Goodfellow No. 12, with other property. Subsequently, in February, 1899, under order of said court, said receiver sold the Goodfellow No. 12 to one E. W. Purdy, who, before the time of sale by the receiver to him, had agreed to sell to respondent. The funds realized upon this sale liquidated all the debts of appellant, and the House trap location was by said receiver thereupon returned to appellant company. At the time the contracts of sale were entered into, it was not known by either appellant or Purdy, respondent or the receiver, that the two locations mentioned, viz., House trap and Goodfellow, were within the lateral limits allowed by law, viz., 2,400 feet. After the sale had been reported to the court, but before the purchase price had been paid to the receiver, on March 31, 1899, all the parties interested therein became aware of the fact that the locations were "too close," but the exact distance was not known. When the 1899 locations were driven, subsequent to April, the

Goodfellow trap owned by respondent was driven slightly to the east of the 1898 location. The House trap location, owned and driven by appellant, was driven some 30 to 200 feet to the west of the 1898 location, bringing the said traps still nearer together. Each of said locations was extended some distance further out to sea. . Respondent brought this action to restrain appellant from the operation of the said House trap location, · claiming to be a purchaser in good faith of the Goodfellow No. 12, and that the said House trap location was within the lateral distance prohibited by law, and upon trial a decree was accordingly entered.

It appeared from the evidence at the trial that the water to the east of House trap location, sufficiently far to be outside of the limit of the Milligan location, is beyond the depth wherein traps are permitted by law; so that, in order to exist in compliance with the said law, either the Goodfellow must move westward or House trap location must be abandoned entirely, and the question presented on this appeal is whether or not respondent, at the time of purchase, was bound to take notice of the distance of Goodfellow trap No. 12 from House trap location, notwithstanding the receiver had impliedly represented that the said Goodfellow trap was a legal location, and that he would convey the "unincumbered title to said property to the purchaser." All the authorities cited by both appellant and respondent go to this question. It is conceded by respondent that the rule of *caveat emptor* ordinarily applies to judicial sales, but it is contended that the rule does not apply here, for the reason that before the sale by order of the court, but after the agreement of sale had been entered into between the receiver and said Purdy, said receiver called a meeting of the stockholders of appellant company, and explained to them the terms and conditions of the sale,

to which all agreed, and no objection was made thereto, and that whatever warranty as to the title was made by said receiver was made with the knowledge and consent of the said stockholders. The record shows that at the time of the agreement referred to, and at the time of sale, and of the said meeting of the stockholders, none of the parties interested knew of the fact that the said trap locations were within the lateral distance prohibited by law; but on the day before the purchase price was paid the appellant learned this fact, and thereupon it was immediately reported to the purchaser, who, notwithstanding this knowledge, paid the money and took possession of the property. The rule is well settled that at said time at least two courses were open to the purchaser, viz: (1) He might rescind the contract (Benjamin, Sales [Bennett's Notes, 1888] § 414 *et seq.;* 15 Am. & Eng. Enc. Law [2d ed.], p. 1224; Kleber, Void Judicial Sales, § 465); or, (2) purchasing and receiving the property with actual knowledge of the defect, he must be satisfied therewith (1 Parsons, Contracts [8th ed.], 577; 2 Schouler, Personal Property, § 322 *et seq.;* Biddle, Warranties, §·142 *et seq.;* Kleber, Void Judicial Sales, p. 412; 15 Am. & Eng. Enc. of Law [2d ed.], 1221-3).

It purchased with eyes open. It was at liberty to investigate. In fact, the record shows that previous to that time it had had surveys made which showed the relative positions of all the locations in the vicinity of its purchase, and had better facilities and means of knowing the exact location of Goodfellow No. 12 with reference to other locations, and better facilities for knowing the exact distances between said traps, than appellant had. There was no latent defect in the location of these traps. The defect, if any at all existed, was open. The property was within its reach, in easy distance, and in plain view; the defect

had been reported by appellant; and respondent had maps of all these locations and surroundings drawn to scale. It is difficult to understand, under these circumstances, upon what equitable principle the purchaser from Purdy can now call upon appellant to abandon the House trap location in order that Goodfellow trap No. 12 may exist. It would certainly follow that, if appellant had sold to respondent directly, whether with or without warranty of title, appellant could not thereafter be heard in a court of equity to complain that the location sold by it was "too close" to another location owned by it and was therefore void. It seems equally clear that, where respondent purchased of appellant with the facts equally within the knowledge of all parties interested, where there was no concealment or *mala fides* on the part of the seller, and where the purchaser had as good an opportunity of knowing the facts, not only from observation, but from a plat drawn to scale, upon which the distances might be measured, the purchaser may not only have what it purchased, but at the same time restrain the operation of a trap owned and operated at the same place in which it was at the time of purchase, and thereby obtain not only the location purchased but also another equally, and perhaps more, valuable. It follows that, if the said Goodfellow trap No. 12 and House trap location had been constructed in the year 1899 upon identically the same locations which they had respectively occupied the previous year, neither party could have any equitable relief against the other. What, then, was the effect of the changes made by each of the parties hereto subsequent to the purchase? The evidence shows that the Goodfellow trap No. 12, owned by respondent, when it was driven for the year 1899, was located slightly to the east of its 1898 location some 10 or 15 feet. The evidence also shows that it is not

always practicable to drive a succeeding trap, which is constructed of piles 75 to 125 feet in length and 18 to 24 inches in diameter, in the same identical place as the previous one, but by custom it is driven alongside, varying from 10 to 30 feet, according to the condition of the old piling, which frequently is broken off so that it cannot be removed. Both traps appear to have been driven after this manner, each toward the other trap. The evidence as to the driving of the House trap location was somewhat contradictory, but we think the weight of the evidence shows it to have been located west from the 1898 location 60 feet at the inner end and 200 feet at the outer end. This distance was an unwarrantable encroachment upon the lateral distance of the two locations, and to this extent was not authorized. Under the evidence in the case, for the reasons above given it was error for the lower court to restrain the operation of House trap location within 2,400 feet of the location of Goodfellow trap No. 12 as constructed in 1899. The evidence justified an order restraining the appellant from constructing and operating House trap location further west than its location in 1898, but no other or different relief.

The cause will be reversed, with instructions to the lower court to enter a decree in accordance with this opinion.

REAVIS, C. J., and FULLERTON and ANDERS, JJ., concur.