[No. 21869. Department Two. February 3, 1930.]

JOHN VITALICH, *Respondent*, v. PACIFIC AMERICAN FISHERIES *et al., Appellants.*[1]

*Kerr, McCord & Ivey, W. B. McCord,* and *W. Z. Kerr,* for appellants.

*R. W. Greene,* for respondent.

MILLARD, J.—John Vitalich, on behalf of himself and others similarly situated, obtained from the court commissioner of Island county September 27, 1928, a temporary injunction and show-cause order directed against the Pacific American Fisheries and the York

[1]Reported in 284 Pac. 805.

Fish Company. The defendants were required by that order to appear October 4, 1928, and show cause why they should not be permanently enjoined from maintaining a fish trap in such a manner in the waters of Puget sound within the limits of Admiralty bay as to unreasonably interfere with the fishing rights of purse seiners. On the return day, all of the parties appearing, the cause was tried on the merits to the superior court of Island county.

The court decided that the mooring dolphins located by the defendants unreasonably interfered with the fishing rights of the respondent and other purse seiners, and entered the following order, from which the defendants appealed:

". . . that the defendants remove the mooring dolphins located to the north and likewise to the south of the jigger of the trap from their present location to locations closer to the pot of said trap or further in shore to a point not exceeding three hundred (300) feet from the line of the web lead of said trap, and that such removal be made on or before six o'clock p. m. of October 8, 1928."

For several years, the appellants have operated, under a proper license, fish trap No. 524 in Admiralty bay in Island county. The location, plat of which was placed of record in the office of the auditor of Island county March 6, 1925, appropriated by the appellants, has a fourteen-hundred-foot lead and shore line running west from the shore of Whidby island to the pot of the fish trap. The area covered by the pot at the end of the lead is one hundred and thirty-five feet in length and ninety feet in width. Appellants' plat shows ten bracing piles or dolphins, one hundred feet apart, approximately two hundred and seventy-five feet north of the lead, and the same number of bracing piles a like distance south of and spaced as on the north side

of the lead. The respondent complains of the location of two dolphins which were driven by the appellants in 1928, pursuant to a permit granted by the United States government. The dolphins consist of four piles held together by wire cable. The government permit recites that the authority to place the two dolphins

". . . does not give any property rights either in real estate or material, or any exclusive privileges; and that it does not authorize any injury to private property or invasion of private rights, or any infringement of Federal, state or local laws or regulations, nor does it obviate the necessity of obtaining state assent to the work authorized. IT MERELY EXPRESSES THE ASSENT OF THE FEDERAL GOVERNMENT SO FAR AS CONCERNS THE PUBLIC RIGHTS OF NAVIGATION."

The offending north and south dolphins are located, respectively, directly north more than five hundred feet and directly south approximately three hundred and fifty feet from a point fifty feet east of the west end of the fourteen-hundred-foot lead and shore line. Appellants claim that the two dolphins were placed for the purpose of mooring the pile drivers and scows when the work of constructing the trap each season is commenced, for mooring scows during the fishing season and for mooring the pile pullers when the season is concluded, as the dolphins are removed when the season closes. Appellants also insist that the waters of Admiralty bay get very rough and the clearance between the dolphins and trap they now enjoy is necessary.

The district in front of and near appellants' trap has been a common fishing ground for respondent and other licensed purse seiners for many years. In laying out, pursing up and hauling in their seines during fishing operations, it is necessary to have a large area, the seines being from fifteen hundred to eighteen hundred

feet long. The tides frequently carry the boats and seines a considerable distance before the seines can be drawn into the boat. If the seine is carried by the tide against any obstruction such as the dolphins, the seine will be damaged and the catch of fish lost. The value of the seines is approximately twenty-five hundred dollars each.

The dolphins are placed directly in the territory where respondent and other purse seiners have for years past laid out their nets. It is impossible for the seiners to fish in that locality because of the certain destruction of their equipment by the fouling of their seines against the dolphins. Respondent argues that the dolphins are an unlawful encroachment upon the fishing grounds and that the respondent and other purse seiners have a common right of fishing at the location described.

It is unnecessary to analyze the testimony. We have read the statement of facts and agree with the view of the trial court, who stated:

"But the question is still undecided whether or not he is within his legal rights in extending his dolphins out so far. If they are reasonably necessary to the proper exercise of his fishing location, then he is within his rights. If they are not reasonably necessary for that purpose, then I think he is going beyond his rights. The only way that Captain Hahn justified the distance, or attempted to justify the necessity of it, was that he had a number of barges that he wanted to string out one behind another, with long bridles and piling. Now I cannot believe that it is the law that he would be permitted to string out these scows as far as he might desire, if by so doing he interfered with rights which others possessed, if there were other methods of handling his material which would not interfere with the rights of others. If he can go as far as he has, a distance of 930 feet from one dolphin to the other, I see no reason why he cannot go 1,500 feet. . . .

"I am quite sure that these men have always fished

the way they testify they did, . . . I am quite sure that these dolphins interfere very materially with their ability to fish. And I am also sure that their fishing in that vicinity lessens the number of fish that go in that trap. But I don't think they would be fishing within the trap if these dolphins were brought in line with this, what they call anchor piles. They are out pretty far; 300 feet, I believe they say. . . .

"Well, I am of the opinion that those piles ought to be drawn in, without any lessening of the usefulness of your fish trap, until they get on a line with those anchor piles, and I am convinced that would leave them ample room for all of their material. They may not be able to string out one scow behind the other, as they have suggested, but I don't think that is a reasonable use of those scows or of their fishing ground. As above stated, if it is, they could extend them out several hundred feet more, and say that they have got two or three more scows that they want to string out one behind the other. I will hold that any use extending those dolphins beyond these anchor piles, is an unreasonable use of your fishing location."

It is not material whether the dolphins were placed, as contended by respondent, to prevent the purse seiners from fishing within appellants' fish trap, or whether the dolphins were, in good faith, located for a useful purpose. The appellants were authorized by their license to operate a fish trap in the locality described above. The respondent and other purse seiners also had a legal right to fish in that district. They exercised that right for years prior to the location of the trap and the placing of the obstructing dolphins. If the placing and maintaining of the dolphins unreasonably interfere with the rights of the seiners to take fish from a common fishery, injunctive relief is warranted. *Morris v. Graham,* 16 Wash. 343, 47 Pac. 752, 58 Am. St. 33.

We are convinced that, if the north and south dolphins are retained in their present locations, it will

be impossible for the purse seiners to fish in the district. It is clear that, if the dolphins are placed as directed by the court, their utility will not be impaired, nor will there be any invasion of the legal rights of the appellants.

The respondent was specially injured in his right to take fish from a common fishery. An action for damages would be an inadequate remedy, therefore equity will interfere by injunction. An action for damages would not be an adequate remedy, as there is no method by which the amount of the damages could be accurately computed. The expected profits from the fishing venture could not be proved by the respondent. He might have made a profit and he might not. Instead of a profit, he might have suffered a loss, all dependent upon the run of fish for that year.

The decree is affirmed.

HOLCOMB, PARKER, FRENCH, and MAIN, JJ., concur.