[No. 24102. Department Two. February 1, 1933.]

WILBUR W. SHERMAN, *Respondent*, v. PACIFIC AMERICAN FISHERIES *et al., Appellants.*[1]

*Kerr & McCord,* for appellants.

*James Zylstra,* for respondents.

STEINERT, J.—This is a contest between rival claimants to a fishing location situated in the waters of Ad-

[1]Reported in 18 P. (2d) 486.

miralty inlet on the west coast of Whidby island in
Island county, Washington. From a judgment in favor
of plaintiff, the defendants have appealed. Appellant
York Fish Company is a subsidiary company of the
appellant Pacific American Fisheries. The interests
of the two companies in this litigation being unified
and identical, they will be herein referred to as appel-
lants without further discrimination.

For a period of about thirty years prior to the com-
mencement of this action, appellants had, from year
to year, constructed and operated a fish trap in the
general vicinity of the fishing location here in question.
In 1905, appellants made a survey of the ground and
filed a location map, following which they constructed,
and thereafter operated, their fish trap thereunder.
That location was about nine hundred and fifty feet
south of the location involved here. On March 6, 1925,
a new survey was made and a new location map filed.
Attached to the map was the owner's certificate, claim-
ing a fishing location under its fishing license No. 524.
That map showed a location about nine hundred and
fifty feet north of the 1905 location, or, in other words,
at the place of the present location.

On October 4, 1928, in an action brought by John
Vitalich against these appellants, the superior court
for Island county entered an order enjoining these ap-
pellants from maintaining certain mooring dolphins
in connection with their fish trap upon the location
claimed under their map filed in 1925 and operated
under their fishing license No. 524. See *Vitalich v. Pa-
cific American Fisheries,* 155 Wash. 411, 284 Pac. 805.
On the very day that the superior court entered its in-
junctive order, these appellants filed in the auditor's
office another map, claiming a fishing location identical
with that shown upon its 1925 map, with the addition
of the above mooring dolphins set about three hundred

feet further from the lead of the trap than was shown upon the 1925 map. The owners' certificate attached to the later map claimed a fishing location under fishing license No. 524, the same license under which the 1925 location was claimed.

It appears that, during the years 1927, 1928, 1929 and 1930, appellants had not constructed their fish trap at the place indicated on either the 1925 or the 1928 map, or within the location claimed by them, but at points variously estimated between four hundred and fifty, and six hundred feet from the true location as surveyed. Appellants admitted a deviation of four hundred and fifty feet. This failure on appellants' part to construct and operate their trap within the location is an important factor in the determination of the rights of the parties.

The respondent was employed by the appellants, during the season of 1927, in driving piles in the construction of their fish trap. The evidence indicates that, during the period of his employment, he became aware of the fact that appellants were not maintaining their trap upon the location claimed by them. On April 1, 1931, respondent, conceiving that appellants had forfeited their rights to use the location by virtue of the fact that for four years they had constructed and maintained their trap beyond the limits thereof, and deeming that the location was therefore open to claim by him, filed in the auditor's office a map, which was a tracing of appellants' 1928 map, including the mooring dolphins, with a certificate attached to the map claiming a fishing location under his fishing license No. 285. That location, it will be observed, is the same as the one claimed by appellants in their 1928 location. Thereafter, during the 1931 season, appellants constructed their fishing appliance upon and within the disputed location, and thereby prevented respondent

from using it, whereupon this action was instituted by him.

Two questions are presented by the assignments of error. The first is whether appellants' failure to construct their trap upon the contested location, or within four hundred and fifty feet thereof, during the years 1927 to 1930, inclusive, constituted such an abandonment thereof as to give respondent the right under the law to claim it by statutory location.

Two sections of the statute have an important bearing upon this question. Rem. Comp. Stat., § 5679, reads, in part, as follows:

"Any person, firm or corporation occupying or desiring to occupy any fishing location where it may be lawful to construct a pound-net, trap or set-net in the waters of the state, shall cause such location to be accurately surveyed by a competent civil engineer, unless a survey thereof has already been made, in which event such existing survey may be used, and shall cause a location map to be made of such location from the actual survey thereof, which shall contain a plat and description of said fishing location sufficient for its ascertainment and identification on the premises. It shall also contain a certificate by the claimant, or by his agent or attorney, stating that he claims the fishing location shown thereon, specifying the date and number of the license under which the same is held and containing the postoffice address of the claimant. Such map, with the certificate thereon, shall be filed in the office of the county auditor of the county in which such fishing location is situated, and a duplicate copy thereof in the office of the commissioner. From and after the date of filing in the office of the county auditor, such map shall constitute full and complete notice that such location is owned, held, occupied and claimed by the person, firm or corporation designated thereon as the claimant. . . .

"It shall not be necessary to file any map or plat of any location heretofore made under existing laws in any case where any map has heretofore been filed:

*Provided,* that all pound-nets, fish-trap, set-net or other fishing locations heretofore made by locators or owners thereof in accordance with existing laws shall be unaffected and unimpaired by any of the provisions of this section, and any location legal when established shall continue valid under the provisions of this act, and the locators or owners of such previously established locations shall continue to occupy, own, hold and enjoy the same, and may mortgage, sell, transfer and lease the same, with the right to renew their licenses therefor in the same manner and with the same legal effect as though said locations had been established under the provisions of this act."

The concluding sentence of Rem. Comp. Stat., § 5684, reads as follows:

."Should the locator or owner of any pound-net or fish-trap location fail to construct a fishing appliance thereon for four consecutive years, his location shall be deemed abandoned, even though he shall have complied in other respects with the laws pertaining thereto."

One of the obvious purposes of § 5679, as quoted above, was to require an accurate survey by a competent civil engineer, so as to enable not only the owner but all other persons who might be interested, to ascertain and identify the true location. Stated in another way, the purpose was to enable and require the owner to definitely indicate the location which he intended to use, and consequently, to enable others who desired to establish similar locations to ascertain what ground was still open to location.

Prior to 1931, there was no statutory warrant for any deviation from the accurate survey. In *Fall & Sockeye Fish Co. v. Point Roberts Fishing & Canning Co.,* 24 Wash. 630, 64 Pac. 792, this court held that a deviation of from ten to thirty feet, under the circumstances there shown, was permissible, but that a deviation of from sixty to two hundred feet constituted an

unwarranted encroachment upon the lateral distance of two locations. In 1931, the legislature passed a statute permitting a deviation of not more than one hundred feet, on certain conditions not material here. Chapter 141, Laws of 1931, p. 433, amending Rem. Comp. Stat., § 5679, *supra*. The amending statute became effective June 10, 1931, which was subsequent to the occurrences which gave rise to this action. Rem. Rev. Stat., § 5679.

While the case of *Fall & Sockeye Fish Co. v. Point Roberts Fishing & Canning Co., supra,* arose out of a contest between two adjoining trap owners, we think the reason underlying that decision applies here. The right to hold a fishing location against encroachment is no greater than the right to acquire one free from dispute. While it may not always be practicable to drive a trap, constructed of piles, in the same place or position as that occupied by one previously, there must of necessity be a limit to the deviation, in the interest of other users or locators. The legislature, in 1931, saw fit to fix the permissible deviation at one hundred feet, and we see no reason why we should fix it at a greater distance for the period prior to that time.

Section 5684, above quoted, is plain and definite. It provides that failure to construct a fishing appliance for four consecutive years shall operate as an abandonment of the original location. As already stated, appellants failed to construct their fishing appliances upon the location during the quadrennium between 1927 and 1930, inclusive. They, therefore, fall clearly within the statute. The first question must, therefore, be resolved against the appellants.

The second question is whether the filing of appellants' new map of October 4, 1928, operated, as a matter of law, as an abandonment by them of their

1925 filing, and constituted a new filing as of October 4, 1928. Appellants now contend that it did. If this question be answered in the affirmative, then manifestly the four-year period did not begin to run until October 4, 1928, and had not expired when respondent filed his location map on April 1, 1931, and consequently respondent would not be entitled to maintain this action.

The question presents some difficulty, but, under our view, it must also be resolved against the contention of the appellants. The statute, Rem. Comp. Stat., § 5684, which provides for forfeiture for non-user, is essentially for the benefit of those members of the public who may be entitled to file upon an open location, and hence it may be invoked against one who has not complied with the duties consequent upon the right and authority that have been granted to him under Rem. Comp. Stat., § 5679. But it may not be subsequently invoked by one to operate retroactively and thereby establish a claim inconsistent with the one originally asserted by him, and thus serve to originate a new claim which the claimant had no intention of asserting as such at the time.

It was admitted in appellants' answer that they had at all times claimed the location of 1925. It was appellants' evidence, through their vice-president and general superintendent, that it was their intention to hold that location and not to abandon it at any time. It must always be remembered, under the somewhat intricate state of facts here presented, that appellants did not construct their fishing appliance upon the location claimed by them, as is required by the statute, although this may have only been the result of mistake or oversight.

The holding in the *Vitalich* case, *supra*, was simply to the effect that mooring dolphins could not be main-

tained by appellants in connection with their fishing appliance, thus compelling their removal. But the fishing location of 1925 itself stood unaffected by the decision. The appellants continued to assert their claim to the original location, and the filing of the 1928 map was merely in aid of, or to fortify, that location, and was not intended to, and did not, operate as a new location. It would present an anomalous situation to hold that, under such circumstances, the filing of the 1928 map operated *ipso facto* to cancel or abandon the location upon which appellants thought they were operating, and to initiate a new claim which appellants had not intended should operate as an abandonment of their former claim.

The sum and substance of the matter is this: Appellants filed their claim of location, intending to operate thereon, but failed to erect their appliances upon it during the four-year period; by a quirk of circumstance, they took a step in the interim, the effect of which as it is now urged by them was not intended at the time; they now hope to avail themselves of a twist of unexpected luck to cure the error which they themselves had previously committed. The lever which they now employ is not of sufficient strength to move the fatal bar of the statute which ousts them for non-user.

The judgment is affirmed.

BEALS, C. J., MAIN, and TOLMAN, JJ., concur.